## UNITED STATES DISTRICT COURT
## SOUTHERN  DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

SHAWN BROUILLETTE and DAVID
WOOP, individually and on behalf of
all others similarly situated,

      Plaintiffs,

V.                                                                          Case No:

GUARDIAN FLEET SERVICES, INC,

      Defendant.

_____.

### FLSA SECTION 216B COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, SHAWN BROUILLETTE and DAVID WOOP, individually, and on behalf of all others similarly situated who consent to their inclusion in this collective action, bring this lawsuit pursuant to §216(b) of the Fair Labor Standards Act ("FLSA"), against Defendant, GUARDIAN FLEET SERVICES INC., for violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* for failure to pay all overtime compensation (premium pay) at the lawful and correct rates to non-exempt employees.

## **INTRODUCTION**

1.      The Fair Labor Standards Act is our nation's foremost wage law. The overtime requirements of the FLSA were designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers..." 29 U.S.C. § 202(a). To achieve its goals, the FLSA sets minimum wage and overtime pay requirements for covered employers.  29 U.S.C. §§ 206(a) and 207(a).  It requires minimum wage and overtime pay for certain non-exempt employees.  29 U.S.C. §213.

2.      Plaintiff, Shawn Brouillette ("Brouillette" or "Plaintiff") worked for Defendant Guardian Fleet Services Inc. during the period of March until November 2024 as a "wrecker" driver, also known as a tow truck driver.

3.      Plaintiff David Woop, ("Woop" or "Plaintiff") worked for Defendant, Guardian Fleet Services Inc., during the period of 2021 until May 2025 as a "wrecker" driver, also known as a tow truck driver.

4.      Defendant has maintained a scheme to avoid its obligations to pay full, accurate and legally required overtime wages to its non-exempt employees to save millions of dollars in labor costs and maximize profits all to the detriment of its employees.

5.      Defendant willfully, or with reckless disregard for the FLSA, underpays Plaintiffs and all other tow truck or wrecker drivers (hereinafter "drivers")

for their overtime hours by failing to pay overtime wages at the required and mandated rate of time and one half the employee's regular rate of pay.

6.     Defendant did not include earned commissions in the calculations of the regular rates of pay as required by the FLSA and thus have underpaid all drivers who earned commissions during any workweek or worked more than 40 hours for the workweek.

7.     Secondarily, Defendant also violated the FLSA's overtime pay requirements by editing and cutting hours.

8.     Plaintiffs, like their fellow driver employees, and who are members of this collective group (aka "Class"), worked out of and reported to more than 50 of Defendant's locations (aka "terminals), throughout Florida and the Southeast United States.

9.     Plaintiffs, like their fellow drivers employed within the past three (3) years preceding the filing of this Complaint, and still to this day, were systematically denied the payment of the lawfully required overtime premium pay for hours they worked in excess of forty (40) on behalf of Defendant.

10.     Defendant maintained these unlawful pay practices applicable to all hourly paid drivers, failing to fully and completely include commissions in the regular rates of pay, and thus underpaying all drivers for the overtime hours they worked.

11.     Accordingly, Plaintiffs, individually, and on behalf of all others similarly situated who consent to their inclusion in this collective action, sue Defendant for violations of the Fair Labor Standards Act for failing to pay Plaintiffs and others similarly situated the lawfully required overtime compensation (aka premiums).

## FLSA COLLECTIVE MEMBER DEFINITION AND RELIEF SOUGHT

12.     This collective action is to recover from Defendant overtime compensation, liquidated damages, prejudgment interest, and the costs and reasonable attorney's fees under 29 U.S.C. §216(b) on behalf of the Plaintiffs and all similarly situated persons composed of:

> **All persons employed as tow truck drivers or wrecker drivers ("drivers") working for or paid by GUARDIAN FLEET SERVICES INC., currently within the preceding 3 years of the filing of this complaint who worked any overtime hours.**

## JURISDICTION AND VENUE

13.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, since this action involves a federal question under the Fair Labor Standards Act, 29 U.S.C., §§201-219, inclusive.

14.     This Court has personal jurisdiction over this action because the Defendant is engaged in business within the State of Florida.

15.    Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391(b) since the acts complained of herein took place in this District, this is the home District where Defendant maintains a local office from where Plaintiffs reported to for work. In addition, Defendant Guardian Fleet Services Inc.'s corporate office is in West Palm Beach, Florida within this district and from where the unlawful policies and practices complained of herein were created, carried out, and enforced.

16.    Upon information and belief, Defendant individually has revenues of $500,000.00 or more in the previous three (3) years and employed twenty (20) or more employees during the same period. Defendant is also engaged in interstate commerce, towing vehicles which, upon information and belief wind up transported out of state, whether on a sale or salvage, of the parts stripped off the vehicle and then sold or the vehicle was salvaged across state lines.

17.    Defendant Guardian Fleet Services Inc. is an employer as defined by Section 203 of the FLSA and subject to the overtime requirements of the FLSA.

## THE PARTIES

18.    At all times relevant to this action, Representative Plaintiff Shawn Brouillette resided in Polk County, Florida, and performed worked for Defendant as a wrecker driver ultimately reporting to the GFS corporate office in West Palm Beach, Florida.

19.     At all times relevant to this action, Representative Plaintiff David Woop resided in Spring Hill, Hernando County, Florida, worked for Defendant as a wrecker driver ultimately reporting to the corporate office in West Palm Beach, Florida.

20.     Plaintiffs were hourly paid employees and classified by Defendant as non-exempt employees, and who were required to and schedule to work each week, more than 40 hours and expected and required to work overtime hours throughout their employment.

21.     Plaintiffs were eligible for and were paid commissions pursuant to some unwritten and unknown formula associated with the costs of the towing.

22.     Plaintiffs' primary job duty was to work as a wrecker driver or "driver" meaning, drive to a crash scene or a place of disablement and hook up the vehicle to the tow truck and drive it to a storage yard or other designated location.

23.     Defendant, Guardian Fleet Services, Inc. (GFS) is a Florida for profit corporation with principal place of business located at 4701 East Avenue, West Palm Beach, FL 33407. Defendant may be served through its registered agent, Capitol Corporate Services, Inc., 515 E Park Avenue, 2nd Floor, Tallahassee, FL 32301.

24.     At all times material, GFS also did business under the business names of the following affiliated and/or subsidiary companies, and who or which are thus joint employers of the collective members: A Superior, Ace Wrecker, Alligator

Towing & Recovery, B & W, Chub's, Crickett's, Dad's Towing, Emerald, Euless B & B Wrecker Service, Howard's, Isaacs Wrecker, Kauff's, Pro-Tow, Professional, Roberts Heavy Duty, Sapp's, TBWS, Texas Auto Carrier, and West Nashville Wrecker Services.

25.     For instance, Plaintiff Woop primarily worked for Crockett's Towing and drove a truck that carried the name Crockett's Towing, but he has performed work for other subsidiary, affiliated companies: Professional Towing, Ace Wrecker, Ace Superior, Alligator Towing, and Kauff's.

26.     Defendant GFS, independently and through all its subsidiary and affiliated companies, employed an estimated 350 or drivers in Florida, Tennessee, Georgia, Kentucky, and Texas working from and reporting to the various terminals, and ultimately whose work and pay practices were directed from and created by GFS from the corporate office in West Palm Beach, Florida.

27.     At all times, Defendant acted as a single integrated business enterprise, and as a joint enterprise with the drivers of its subsidiary and/or affiliated companies, with GFS, as the entity who is responsible for the pay practices complained of herein and thus an employer of for all drivers it processed paychecks for.

28.     Defendant GFS operates all these businesses as a single, integrated business enterprise, with shared employees, company policies and procedures, benefits, insurance, offices, officers and intermingles and assigns work to Plaintiffs

and the class of similarly situated drivers as needed, but all of whom are paid by GFS.

29.     Pursuant to the FLSA, Plaintiffs and the class of similarly situated need not have worked for every subsidiary and affiliated company to hold the same liable here for the underpaid wages of those similarly situated drivers. Multiple entities may be considered a single employer for the purposes of FLSA under the "the single employer/enterprise theory" because the named Defendant is part of a single integrated enterprise, "such that an employee need not have worked at each entity in order to hold each liable for employment-related violations." *Chang Yan Chen v. Lilis 200 W. 57th Corp.,* No. 19-cv-7654, 2020 U.S. Dist. LEXIS 244695, 2020 WL 7774345, at *3 (S.D.N.Y. Dec. 30, 2020). *Ding v. Mask Pot,* No. 20-CV-06076 (LDH), 2022 U.S. Dist. LEXIS 180242, at *5 (E.D.N.Y. Sep. 30, 2022).

30.     GFS jointly directed the work of Plaintiffs and all others similarly situated; GFS paid Plaintiffs and the other drivers; created and controlled the employees under a single set of employment rules, procedures, and a centralized payroll and time keeping process directed from the corporate office; and GFS created and enforced the pay practices complained of herein for all drivers, including those of the named an identified subsidiary or affiliated companies; further and most importantly, GFS also was responsible for the unlawful pay practices complained of.

31.     GFS also has arrangement between its subsidiary and affiliated entities to share an employee's services or to interchange employees and essentially exercised employer controls, and drivers were under a single common control with GFS.

**GENERAL FACTUAL ALLEGATIONS**

32.     Plaintiffs, like all other employees working as a "tow truck driver" or "wrecker driver", were paid on an hourly, non-exempt basis, and with a commission structure or plan for the jobs or services performed paid on a weekly basis.

33.     Plaintiffs worked mandatory schedules of 5 days, and were assigned to be on-call on a certain number of evenings, and on a certain weekends, which routinely and usually resulted in being called upon to do work by Defendant each on-call shift.

34.     When Plaintiffs were assigned to be on call, whether in the evening or on a weekend, they were required to answer and respond to a dispatch call within 15 minutes and present to the location within a set amount of time.

35.     Thus, Plaintiffs had to be with the tow truck when on call, and were limited in where they could go, what they could do during this on call time, stay tied to the truck, and always engaged and ready to work.

36.     Since Plaintiffs were drivers, when on call they could not drink alcohol as the same would put them in an impaired and unlawful state of driving under the influence as per Florida law.

37.     Moreover, Plaintiffs could not leave their assigned geographic areas when on call.

38.     The GFS on call company policy limited the employee's ability to engage in personal activities while on call or standby, and thus, the entirety of the on-call or stand-by time was primarily for the benefit of GFS and compensable time for which these overtime hours should be counted and paid.

13.     Plaintiffs' job duties primarily involved being informed by one or more dispatchers of a location which requires a vehicle to be towed or transported on the wrecker or tow truck.

14.     Each day, Plaintiffs had to be in the truck at mandated and scheduled times and perform preliminary and postliminary activities.

15.     Plaintiffs routinely worked more than 40 hours throughout the term of his employment with GFS and were paid a premium of some amount for their work hours.

16.     Upon review of Plaintiffs' paycheck statements, and other drivers for GFS employed within the same time reveals that GFS willfully failed to include the

earned commission in the regular rate of pay, resulting in an underpayment of overtime wages.

17.     The FLSA requires the regular rate of pay include the commissions in the calculation and then, as drivers are hourly paid employees, they are to be paid time and ½ the regular rate of pay, and not time and ½ the base hourly rate of pay as appears to be the case by GFS applicable to all drivers in the collective.

18.     Further review of paycheck statements shows a payment for "other" compensation which also appears to excluded from the regular rate of pay and overtime rate calculations.

19.     The work schedules assigned to Plaintiffs were far greater than 40 hours each week, and with the on-call periods, even upwards of 70 or more hours per workweek they were expected to work.

20.     Plaintiffs did not have the discretion while on call or stand-by to decline a call, as the same would result in disciplinary action or even termination of employment; the same if they failed to timely respond to a dispatched tow call.

21.     However, the overtime wages paid to Plaintiffs and to similarly situated drivers were not compliant with the FLSA's required payment of 1.5 times the regular rate of pay and resulted in underpayments of overtime wages to Plaintiffs and all other similar situated drivers.

22.     The formula used by Defendant to pay drivers for overtime pay, is strictly within Defendant's knowledge and not ascertainable by Plaintiffs simply from reading the paystubs of their or other drivers. However, when adding in earned commissions into the regular rate of pay, an underpayment in the wages owed appears to exist and that Defendant did not fully include and factor in the earned commissions for the work weeks in the regular rate of pay.

23.     Defendant used a bi-weekly pay cycle and the commissions earned were paid within that same pay period payroll check.

24.     Plaintiffs also did not receive any overtime supplement or shore up when commissions were paid for any preceding work weeks in which they worked overtime hours.

25.     Commissions were paid by Defendant to drivers, including to Plaintiffs, on a bi-weekly basis along with the base hourly wages.

26.     Dispatchers would assign Plaintiffs new jobs to perform throughout each day.

27.     For purposes of the collective action, Plaintiffs Brouillette and Woop, by this Complaint, do herein consent to be a party to this action pursuant to 29 U.S.C. §216(b).

28.     Defendant maintained a policy and practice during the preceding three (3) years of the filing of this Complaint of willfully underpaying its non-exempt

drivers, of failing to pay for all on-call and stand-by overtime hours, and of editing or shaving off hours to account for DOT regulations or limitations on hours driven without breaks.

29.     Human Resources or payroll department employees disclosed to one or more drivers that when hours exceeded a number that had some impact under limits for drivers under DOT regulations, they edited and shaved off hours without disclosure to the drivers.

30.     Defendant willfully violated, and continue to violate, §207 of the FLSA by failing to pay Plaintiff and others similarly situated the correct and lawful required overtime compensation and premiums at the mandatory time and one half of their regular rates of pay for all hours over 40 in each and every workweek.

31.     Upon information and belief, for the three (3) year period before this filing, (the "Class Period"), the continued violations of FLSA §207 that are complained of herein have been practiced and imposed upon all of Defendant's drivers paid by GFS.

32.     The FLSA provides that, with certain exceptions, employers must pay employees overtime of at least one and one-half (1.5) times their regular rate of pay for any hours over forty (40) worked in a week. 29 U.S.C. §207(a)(1).

33.    The editing or shaving off time from drivers' time records thus results in a gross underpayment of overtime wages earned and owed, and amounts to a theft of their wages as well as an act of unjust enrichment.

34.    Upon information and belief, Defendant willfully shaved and edited off hours from drivers' time records over the preceding 3 years without disclosing to them when it was done, and in direct violation of the FLSA.

35.    The FLSA mandates that earned commissions must be included in the regular rate of pay calculation and that overtime pay for hourly, commissioned employees must include the commissions earned in the time and one half calculations for premiums to be paid for overtime hours worked.

36.    Accordingly, Plaintiffs and the putative class of similarly situated seek and are entitled to recover all overtime pay due from overtime hours worked for which compensation was not paid at the correct and lawful rates or not paid at all, plus an equal sum in liquidated damages, prejudgment interest, attorneys' fees and costs under the FLSA's three (3) year statute of limitations.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

37.    Plaintiffs bring this action individually and on behalf of all other similarly situated Drivers as a collective action pursuant to the Fair Labor Standards Act, 29 USC §216(b).

38.     In *Young v. Cooper Cameron Corp.,* the court stated that: "The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action and thus no showing of numerosity, typicality, commonality and representativeness need be made." *Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

39.     Still, despite the *Young* court's ruling, the members of the Collective (aka class) are so numerous that joinder of all members is impracticable and in the interests of justice, as well as in keeping with the legislature's intent in creating Collective Actions under Section 216(b), proceeding as a collective action is proper in this case. While the exact number of the members of the collective is unknown to the Plaintiffs at this time and can only be ascertained through appropriate discovery, upon information and belief, Plaintiffs believe that there are 350 or more individuals who were employed by GFS within the three (3) year relevant claim period.

40.     Plaintiffs will fairly and adequately protect the interests of the members similarly situated drivers and have retained counsel that is experienced and competent in class/collective actions and employment litigation. Plaintiff remains an employed wrecker driver, and has no interest that is contrary to, or in conflict with, members of the collective.

41.     A collective action suit, such as the instant one, is superior to other available means for a fair and efficient adjudication of this lawsuit. The damages

suffered by individual members of the collective may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the collective to individually seek redress for the wrongs done to them.

42.     A collective action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy. Absent these actions, the members of the collective likely will not obtain redress of their injuries and Defendant will retain the proceeds from its violations of the FLSA.

43.     Furthermore, even if any member of the collective could afford individual litigation against the Defendant, it would be unduly burdensome to the judicial system. The instant methodology, when compared to voluminous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the collective and provide for judicial consistency.

44.     Upon information and belief, all Drivers performed the same basic and primary job requirements as the Plaintiffs and had similar job duties and responsibilities: go to assigned sites and tow, pick up, and transport disabled trucks and vehicles.

45.     All drivers were paid some base hourly rate of pay and a commission based upon the value of the tow.

46.     There is a well-defined community of interest in the questions of law and fact affecting the Collective as a whole. The questions of law and fact common to each of the collective members predominate over any questions affecting solely individual members of the action. Among common questions of law and fact are:

a.     Whether Defendant employed members of the collective within the meaning of the applicable provisions of the FLSA;

b.     Whether Defendant unlawfully underpaid Plaintiffs and all other similarly situated Drivers for overtime hours worked by failing to include the commissions earned and properly calculate overtime rates of 1.5 times their respective regular rates of pay in in violation of the FLSA and whether this underpayment was willful;

c.     Whether Defendant willfully shaved or edited work hours off Drivers' time records, and thus failed to pay overtime wages for all hours worked in violation of the FLSA;

d.     Whether Plaintiffs and the Collective have sustained damages, and if so, what is the proper measure of such damages; and

e.     Whether Defendant willfully and with reckless disregard, underpaid Plaintiffs and the Class of similarly situated, even when they did pay a premium for overtime hours worked.

47.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance as a collective action.

## COUNT I:
## VIOLATION OF § 207 OF THE FLSA

48.     The foregoing paragraphs are realleged and incorporated as if fully set forth herein.

49.     At all relevant times, Defendant employed Plaintiffs, and the defined collective, as an Employer within the meaning of the FLSA.

50.     Upon information and belief, all Drivers were paid under a common and similar compensation plan and scheme, consisting of a base hourly rate of pay plus a commission plan and were all classified and treated by Defendant as non-exempt employees under the FLSA.

51.     Upon information and belief, Defendant shaved off and edited off hours from certain workweeks of drivers when the hours exceeded some permitted number under DOL regulations, and which might draw or raise a flag of concern by the DOT if and when audited.

52.     This action of cutting, shaving or editing earned and worked hours from drivers' time records is a willful violation of Section 207a of the FLSA and willful refusal to pay overtime premiums for all hours worked over 40 in each workweek.

53.     Defendant, in violation of the FLSA, willfully underpaid Plaintiffs and all other Drivers overtime premiums by failing to fully and properly include earned commissions in the regular rate of pay calculations or otherwise, and alternatively, used some other formula to underpay Plaintiffs and the collective members the full time and one half of their effective regular rates of pay for hours worked over 40 in each and every workweek..

54.     As a result of these unlawful pay practices complained of herein, throughout the three (3) year class period to the present, Defendant effectively stole wages from Drivers and been unjustly enriched.

55.     Defendant knowingly and willfully failed to pay Plaintiffs and all other members of the collective, overtime compensation at the appropriate legal rate for all hours they performed work on behalf of Defendant above and beyond forty (40) hours per workweek in violation of the FLSA, in particular 29 U.S.C. § 207.

56.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

57.     Defendant cannot and does not have a good faith basis under the FLSA for its willful and unlawful pay practices and actions complained of by Plaintiffs.

58.     Plaintiffs and the collective of similarly situated drivers thus are entitled to and should be awarded liquidated damages of an equal sum of the overtime wages awarded or recovered for a period of three (3) years preceding the filing of this action to the present and continuing.

59.     Due to Defendant's willful FLSA violations, Plaintiffs allege individually and on behalf of the members of the Collective that they have suffered damages and are entitled to recover from Defendant the unpaid and underpaid overtime compensation due and owing for all hours worked in excess of forty (40) in each and every workweek, an additional equal amount as liquidated damages, prejudgment interest, reasonable attorneys' fees, costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

**WHEREFORE** Plaintiffs, SHAWN BROUILLETTE and DAVID WOOP pray for and demand judgment against Defendant as follows:

a.     An order designating this action as a collective action and issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated individuals across the nation with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Join this action as Plaintiffs pursuant to §216(b); and that notice be sent to all past and present employees of all named Defendant any time during the three (3) year period immediately preceding the filing of this suit,

through and including the date of this Court's issuance of the Court Supervised Notice;

b.      An order awarding Brouillette, Woop, and all Plaintiffs who consent to join, their incurred attorneys' fees and costs pursuant to §216 of the FLSA;

c.      That the Court find that GFS has willfully violated the overtime compensation requirements of section 207a of the FLSA and award wages back 3 years preceding the filing of this Complaint;

d.      That the Court award to Plaintiff Brouillette, Plaintiff Woop, and the collective members who consent to join, the balance of the underpaid overtime compensation owed associated with all the previous hours worked over forty (40) hours in each and every workweek during the preceding 3 years to the present and continuing, AND an equal sum in liquidated damages;

e.      That the Court award Plaintiffs and the putative class of similarly situated, overtime wages for all unpaid hours worked in each and every work week in the preceding 3 years to the day of trial which were edited or shaved off time cards, plus an equal sum in liquidated damages, and interest on said award;

f.     That the Court enjoin Defendant from further violating the FLSA for the same unlawful pay practices complained of herein;

g.     That the Court approve and supervise issuance of notice of this action to be sent to all similarly situated collective members and certify this action to proceed collectively under section 216(b) of the FLSA.

h.     That the Court award any other legal and equitable relief as this Court may deem appropriate, fair, and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Filed this 3rd day of February 2026.

Respectfully submitted,

*/s/ Mitchell Feldman, Esq.*
**Mitchell L. Feldman, Esquire**
Florida Bar No.: 0080349
FELDMAN LEGAL GROUP
12610 Race Track Road #225
Tampa, Florida 33626
Tel: 813-639-9366
Fax: 813-639-9376
Mfeldman@flandgatrialattorneys.com
mail@feldmanlegal.us
*Lead Attorney for Plaintiffs and all those similarly situated*